## In re PLACE.

### Patent Appeal No. 3567.

Court of Customs and Patent Appeals.
Feb. 24, 1936.

GRAHAM, Presiding Judge, and BLAND, Associate Judge, dissenting.

Strauch & Hoffman, of Washington, D. C. (James A. Hoffman, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

From a decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner in denying patentability, in view of the prior art, of claims 21, 23, 24, and 25 of appellant's application for a patent, appeal has been taken here. The application relates to a fastener in the nature of a snap fastener or spring stud fastener which is designed for securing upholstery panels to the interior of automobile bodies. The particular construction of appellant's device is sufficiently shown by the terms of each of the claims involved, of which claim 21 is illustrative and which is as follows:

"21. A metallic spring stud fastener complete in itself for securing a perforated panel to a supporting structure and capable of resilient expansion and contraction in entering an aperture in a wall of the supporting structure, formed from a single elongated strip of relatively stiff metal of a width materially less then the diameter of said aperture by bending the intermediate portions thereof on lines transverse to the length of said strip to form a resilient shank having a nose and two outwardly bowed legs, and by bending the ends to form separate head sections capable of free movement toward and from each other upon contraction and expansion of said shank, said head sections being disposed in planes substantially at right angles to the length of the shank, said legs between said head sections and the point of maximum outward bowing converging throughout a distance many times the normal thickness of said wall of said supporting structure so that the fastener is adapted to hold panels to walls of varying thicknesses with a continuously effective yielding pressure."

The references relied upon are:

Saunders, 244,675, July 19, 1881.
Bauer, 321,940, July 14, 1885.
Hamburger, 432,938, July 22, 1890.
Place, 1,679,266, July 31, 1928.

In addition to the above references, there appears in the record the French patent to Plaut, 387,068, of April 28, 1908, which was cited by the examiner as disclosing the limitations in claims 15 and 18 relating to the substantially closed loop head of the fastener. The board disagreed with the examiner as to the applicability of the reference Plaut to said feature of claims 15 and 18, and reversed the examiner's holding as to these two claims. Claims 15 and 18 and the reference Plaut are, therefore, not before us for consideration.

The examiner's decision in this appeal does not set out his detailed application of the references to appellant's structure, but states that the claims stand finally rejected on the grounds stated in an interference decision in interference No. 62,812. The decision, by the Examiner of Interferences, in said interference, was appealed from to the Board of Appeals and the decision of the Examiner of Interferences was affirmed.

The Board of Appeals in its decision in the instant case reversed the examiner's action as to claims 15 and 18, affirmed the same as to the other claims involved, and in its decision said: "Claims 21, 23, 24 and 25 correspond to the issue counts of Interference No. 62,812. During the pendency of that interference, we had occasion to pass on the patentability of these claims and held them unpatentable over appellant's prior patent in view of Hamburger and the other equivalent disclosures above referred to. We have given some consideration to the question of the patentability of these claims but find no reason for changing the views formerly expressed."

The board's decision in said interference case is not in the record at bar, but it does appear that the claims were found unpatentable there upon the same references as are cited here.

In considering the applicability of the references, it is important to note that the involved claims call for a fastener which is made of a single piece of wire, which, by bending at the middle portion thereof, forms a resilient shank consisting of a nose and two legs having outwardly bowed portions. Appellant's structure, therefore, is a fastener with two parts to the head formed by the ends of the bended wire which press together or near-

ly so as the nose enters the opening into which the fastener is projected. The nose or portion which penetrates the object to which the panel is to be fastened is diamond-shaped and is continuous at the point.

An important element of the various claims is that described in claim 21 as follows: " * * * and by bending the ends to form separated head sections capable of free movement toward and from each other upon contraction and expansion of said shank, said head sections being disposed in planes substantially at right angles to the length of the shank * * *."

This element is set forth in similar language in all of the other claims here on appeal, and it, in conjunction with other elements of the claims, permits a wedging action so that the panel is drawn or wedged firmly upon the supporting structure.

The fastener in appellant's patent, while being made of a single wire, differs from the structure involved here in that the ends of the wire are not continuous at the point of the nose but overlap each other in such a way as to permit the legs of the diamond-shaped nose to be pressed closer together, thereby permitting the entrance into the opening in the object to which the panel is to be fastened. Unlike the structure at bar, the head of the fastener is continuous and is not designed to flex or spread for the purpose aforesaid.

The patent to Hamburger is for a fastener for use with textile fabrics which is made in two parts, the male element of which is of concern here. This portion is clamped upon the surface of a fabric and the female element upon the surface of another fabric. The male element consists of a diamond-shaped resilient shank or nose which, when placed into the opening of the other element, flexes inwardly along the sides or legs of the nose.

The patent to Bauer shows a fastener for gloves and other articles which is in the form of an elastic button which is designed to be attached to a flat metallic spring strip, and in this manner used for closing openings in garments such as the flaps in gentlemen's trousers. The feature of the fastener relied upon by the tribunals below is that of the nose or protruding portion of the fastener which is continuous to the shank ends forming the head.

The patent to Saunders relates to a fastener for shoes, and the construction of the spring stud therein which holds together two pieces of material is quite similar to Hamburger's fastening device and the garment fastener of Bauer.

With respect to appellant's prior patent the Board of Appeals in its decision stated: " * * * Structurally, the diamond element of the former fastener comprises parts which are separated at two of the angles instead of one, as in the present case. Flexing consequently takes place in accordance with a somewhat different principle. However, the remaining references show equivalent constructions wherein flexing *in our opinion* takes place in the same manner. Hamburger, for instance, shows a fastener including a male element of diamond shape having heads which are designed for application to one of the parts to be united." (Italics ours.)

Inasmuch as the board states that the structure of appellant's application differs from the structure of his prior patent, and that the flexing of the fastener here involved "takes place in accordance with a somewhat different principle," we fail to see wherein appellant's prior patent has any relevancy to the issue before us.

With respect to the Hamburger patent, neither in the drawings nor the specification is there shown "separated head sections capable of free movement toward and from each other upon contraction and expansion of said shank," and neither of the Patent Office tribunals specifically so found because, as hereinafter noted, there was no discussion in the decision of either of the Patent Office tribunals of the element of the claims here under consideration.

It is apparent that the flexing of the fastener shown by Hamburger is obtained only through a lengthening and shortening of the diamond-shaped shank, which is the same principle involved in appellant's prior patent, rather than by a lateral movement of the head sections toward and from each other. The drawings in the Hamburger patent which are relevant here are Figures 1 and 2; they show no clearance between the head sections at the base of the shank, and it must be borne in mind that these drawings show the male element in relaxed position, before flexing. Furthermore, Hamburger posi-

tively contemplates and provides for fixed anchoring of these head sections in the material to which his male element is applied. Bearing in mind that each of the claims on appeal requires that the head sections be "capable of *free* movement toward and from each other" (italics ours), as expressed in claim 21 and in equivalent language in the other claims, we cannot see how it can be said that this element of the claims 's met by the reference Hamburger.

From these considerations, it is not only our opinion that flexing of said shank cannot take place in Hamburger's structure under the principle underlying appellant's device here involved, but also that Hamburger himself could never have contemplated such principle, and certainly his patent does not teach it. For this reason we are of the opinion that the Board of Appeals was in error in relying upon Hamburger for a principle of flexing admittedly not present in appellant's prior patent.

This being true, the wedging action of the head sections and shank secured by appellant's device is not possible in the device disclosed by Hamburger. These same observations are also applicable to the other references relied upon by the Patent Office tribunals.

We think it proper to observe that we find no discussion in the decision of the board, or in the statement of the examiner, with respect to the element of the claims here under consideration. It is our opinion that this element is not disclosed by the references, and that from such references this element would not be obvious to one skilled in the art. We are further of the opinion that said element lends novelty and utility to the structure described in the claims and that the claims are patentable.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.

GRAHAM, Presiding Judge (dissenting).

I dissent. I am of opinion that the reference patent to Hamburger discloses the alleged patentable feature here involved, namely, separated head sections capable of free movement toward and from each other. The attachment to a textile does not prevent such free movement. If it did, Hamburger's device would not be operable at all.

BLAND, Associate Judge (dissenting).

I must respectfully dissent from the decision of the majority which reversed that of the board.

The majority thinks that none of the references show that feature of the four claims involved which is expressed in claim 21 by the following language: "by bending the ends to form separate head sections capable of free movement toward and from each other upon contraction and expansion of said shank," and that so constructing the head sections in the combination set out in the claims amounted to invention.

The tribunals below concurred in holding the claims unpatentable over appellant's prior patent in view of Hamburger and the other equivalent disclosures of record.

Although once standing allowed, the examiner, after the board in a former appeal had held the claims at bar unpatentable for the foregoing reasons, again considered claims 15 and 18 and rejected them upon Plaut in view of Bauer, Hamburger, or Place, and stated that it would not require invention in outwardly bowing the leg portions 6 of the fastener in Plaut in the manner shown to be old in Bauer, Hamburger, or Place. The examiner referred to Plaut for two purposes: To show the separated head sections feature and also to illustrate how the outwardly bowed leg portions of Plaut might be made the equivalent of that feature in the appealed claims without involving invention. The board stated that the examiner relied upon Plaut, "primarily, to show legs which terminate in closed loops." The board thought Plaut's problem was entirely different from that of the appellant and that his disclosure did not fairly suggest the modification of the Hamburger or similar devices "to provide his fastener elements with legs which terminate in closed loops." The board, therefore, reversed the examiner as to claims 15 and 18.

Now, it will be observed that the board only disagreed with the examiner in his consideration of Plaut in relation to the showing there of "legs which terminate in closed loops." The board, however, relies upon the other references of rec-

ord in its affirmance of the examiner's rejection of the appealed claims.

I feel certain that Hamburger squarely anticipates that feature of the claims relating to the head sections being capable of free movement toward and from each other. If there is any ground for concluding that there is some slight difference between the Hamburger device and that of appellant in this respect, it would then seem certain that it would not require invention to modify the Hamburger device. An examination of the drawing of the male member of the Hamburger fastening device discloses that it has the resilient diamond-shaped shank, composed of a strip of metal, bent in the intermediate portions which form the resilient shank, and that the metal is so bent as to form head sections which are separated and, at least in some degree, are capable of free movement toward and from each other upon contraction and expansion of said shank. It must be remembered that the Hamburger device is for use in textiles, the flexibility of which textile would permit some flexing of the legs and head portions.

Since claims 15 and 18 had been allowed and since the instant appeal does not involve these claims, the Solicitor for the Patent Office stated that the patent to Plaut was not before this court. If this court's holdings in Re Tucker and Reeves, 54 F.(2d) 815, 19 C.C.P.A.(Patents) 810, and In re Wagenhorst, 64 F.(2d) 780, 20 C.C.P.A.(Patents) 991, are strictly applied here, it might be proper to hold that this court, in considering the action of the board in affirming the rejection of the appealed claims, should not consider the Plaut reference. Therefore, any reference to the same hereinafter is not made with a view of suggesting that Plaut may be resorted to by us as a reference which may be given the same consideration as the other references, but is for the purpose of illustrating that if this court is to be helpful to the Patent Office under the particular jurisdiction which, for reasons which seemed compelling, we outlined for ourselves, we should not split hairs when we consider proper record references and should not, by a divided court, reverse the board and cause claims to be allowed in the face of facts, to which we cannot close our eyes, which show them to be invalid.

An examination of the Plaut patent would seem to settle beyond controversy that the feature in the appealed claims relied upon by the majority to lend patentability was old in the art of fasteners. Plaut has two separate head sections capable of free movement toward and from each other upon the contraction and expansion of the shank and Plaut so describes them in his application. He states: "* * * The fastening part will thus be kept in place with sufficient certainty to prevent the button from coming detached by accident. It can, however, be detached when desired by manipulating the disks 7 so as to compress the shaft 6; the fastening part can then be withdraw[n] as will easily be understood."

The board states, in reversing the examiner who relied upon certain features of the Plaut patent as to claims 15 and 18, not here involved, that: "Inasmuch as Plaut's problem was entirely different from that of the appellant, we are of the opinion that his disclosure does not fairly suggest the modification of the Hamburger or similar devices to provide his fastener elements with legs which terminate in closed loops."

The difference in the problem between Plaut and the applicant was not said to exist in relation to the feature of the claims relied upon by the majority.

It is my view that if the Patent Office includes the four appealed claims here involved in the patent which it will issue (and I do not say whether or not it is compelled to do so), it will thereby assert prima facie validity to claims which everyone concerned in the situation must know, in view of the foregoing, are wholly invalid (if their validity depends upon the matter relied upon by the majority). In view of all the foregoing considerations, the point which I chiefly wish to stress is: Why is it thought necessary to reverse, by a divided court, the decision of the board on such questionable grounds.

The decision of the Board of Appeals should be affirmed.